**INDEX OF EXHIBITS**

Exhibit A        Excerpts of Division I 2024-25 Manual                16 pp.

**EXHIBIT A**

**EXHIBIT A**



# DIVISION I
## 2024-25 MANUAL

### III. VOTING REQUIREMENTS FOR MANUAL

The Manual presents all regulations on a given subject in logical order. As a result, different paragraphs in the same sections may carry different voting requirements. The following terms define voting requirements currently in effect in the Manual:

- **Constitution** — Provisions in the constitution, Articles 1 through 6, require a two-thirds majority vote of the total membership (present and voting) for adoption or amendment.

- **Area of Autonomy** — An area of autonomy is a legislative provision that provides legislative flexibility to the Atlantic Coast Conference, Big Ten Conference, Big 12 Conference and Southeastern Conference and their member institutions. The abovementioned conferences are granted autonomy in these areas to permit the use of resources to advance the legitimate educational or athletics-related needs of student-athletes and for legislative changes that will otherwise enhance student-athlete well-being. The requirements for adoption, amendment and expansion of the areas of autonomy are set forth in Bylaw 9.2.2.1. A legislative provision that is an area of autonomy is identified by a capital letter A in brackets and bold font immediately after the title of the provision.

- **Common provision** — Legislation that is derived from the common bylaws (9, 10, 12 and 13) in the 1988-89 Manual. All such legislation is identified by a pound sign [#] in brackets and bold font immediately after the title of the provision and requires a majority vote of each of the three divisions, voting separately, for adoption or amendment.

- **Federated provision** — Legislation that is derived from divided bylaws in the 1988-89 Manual. Such legislation can be adopted or amended by a majority vote of one or more of the subdivisions voting separately.

- **Division dominant** — A division dominant provision is one that applies to all members of Division I and is of sufficient importance to the division that it requires a two-thirds majority vote of all delegates present and voting at an annual or special Convention. Division dominant provisions are identified by a diamond symbol [♦] in brackets and bold font immediately after the title of the provision.

- **Football Championship Subdivision Dominant** — A Football Championship Subdivision dominant provision is a regulation that applies only to the Football Championship Subdivision and is of sufficient importance to the subdivision that it requires a two-thirds majority vote for adoption or to be amended pursuant to the legislative process set forth in Bylaw 9.2.2.2. Football Championship Subdivision dominant provisions are identified by the initialization FCSD in brackets and bold font immediately after the title of the provision.

**Symbols Designating Voting Requirements and Subdivisions for Which Federated Legislation Is Applicable**

| Provision | Symbol |
|---|---|
| Area of Autonomy | A |
| Common | # |
| Division dominant | ♦ |
| Federated | |
|     Football Bowl Subdivision | FBS |
|     Football Championship Subdivision | FCS |
|     Football Bowl Subdivision and Championship Subdivision | FBS/FCS |
|     Football Championship Subdivision Dominant. | FCSD |

## Commitments to the Division I Collegiate Model

In addition to the purposes and fundamental policy of the National Collegiate Athletic Association, as set forth in Constitution 1, members of Division I support the following commitments in the belief that these commitments assist in defining the nature and purposes of the division. These commitments are not binding on member institutions but serve as a guide for the preparation of legislation by the division and for planning and implementation of programs by institutions and conferences.

**The Commitment to Value-Based Legislation.** Bylaws proposed and enacted by member institutions governing the conduct of intercollegiate athletics shall be designed to foster competition in amateur athletics, promote the Association's enduring values and advance the Collegiate Model as set forth in the NCAA Constitution. In some instances, a careful balancing of these values may be necessary to help achieve the purposes of the Association.

**The Commitment to Amateurism.** Member institutions shall conduct their athletics programs for students who choose to participate in intercollegiate athletics as a part of their educational experience and in accordance with NCAA bylaws, thus maintaining a line of demarcation between student-athletes who participate in the Collegiate Model and athletes competing in the professional model.

**The Commitment to Fair Competition.** Bylaws shall be designed to promote the opportunity for institutions and eligible student-athletes to engage in fair competition. This commitment requires that all member institutions compete within the framework of the Collegiate Model of athletics in which athletics competition is an integral part of the student-athlete's effort to acquire a degree in higher education. The commitment to fair competition acknowledges that variability will exist among members, including facilities, geographic locations and resources, and that such variability should not be justification for future legislation. Areas affecting fair competition include, but are not limited to, personnel, eligibility and amateurism, recruiting, financial aid, the length of playing and practice seasons, and the number of institutional competitions per sport.

**The Commitment to Integrity and Sportsmanship.** It is the responsibility of each member institution to conduct its athletics programs and manage its staff members, representatives and student-athletes in a manner that promotes the ideals of higher education and the integrity of intercollegiate athletics. Member institutions are committed to encouraging behavior that advances the interests of the Association, its membership and the Collegiate Model of athletics. All individuals associated with intercollegiate athletics programs and events should adhere to such fundamental values as respect, fairness, civility, honesty, responsibility, academic integrity and ethical conduct. These values should be manifest not only in athletics participation, but also in the broad spectrum of activities affecting the athletics programs.

**The Commitment to Institutional Control and Compliance.** It is the responsibility of each member institution to monitor and control its athletics programs, staff members, representatives and student-athletes to ensure compliance with the Constitution and bylaws of the Association. Responsibility for maintaining institutional control ultimately rests with the institution's campus president or chancellor. It is also the responsibility of each member institution to report all breaches of conduct established by these bylaws to the Association in a timely manner and cooperate with the Association's enforcement efforts. Upon a conclusion that one or more violations occurred, an institution shall be subject to such disciplinary and corrective actions as may be prescribed by the Association on behalf of the entire membership.

**The Commitment to Student-Athlete Well-Being.** Intercollegiate athletics programs shall be conducted in a manner designed to enhance the well-being of student-athletes who choose to participate and to prevent undue commercial or other influences that may interfere with their scholastic, athletics or related interests. The time required of student-athletes for participation in intercollegiate athletics shall be regulated to minimize interference with their academic pursuits. It is the responsibility of each member institution to establish and maintain an environment in which student-athletes' activities, in all sports, are conducted to encourage academic success and individual development and as an integral part of the educational experience. Each member institution should also provide an environment that fosters fairness, sportsmanship, safety, honesty and positive relationships between student-athletes and representatives of the institution.

**The Commitment to Sound Academic Standards.** Standards of the Association governing participation in intercollegiate athletics, including postseason competition, shall be designed to ensure proper emphasis on educational objectives and the opportunity for academic success, including graduation, of student-athletes who choose to participate at a member institution. Intercollegiate athletics programs shall be maintained as an important component of the educational program, and student-athletes shall be an integral part of the student body. Each member institution's admission and academic standards for student-athletes shall be designed to promote academic progress and graduation and shall be consistent with the standards adopted by the institution for the student body in general.

**The Commitment to Responsible Recruiting Standards.** Recruiting bylaws shall be designed to promote informed decisions and balance the interests of prospective student-athletes, their educational institutions, the Association's member institutions and intercollegiate athletics as a whole. This commitment includes minimizing the role of external influences on prospective student-athletes and their families and preventing excessive contact or pressure in the recruitment process.

**The Commitment to Diversity and Inclusion.** The Division I membership believes in and is committed to the core values of diversity, inclusion and equity, because realization of those values improves the learning environment for all student-athletes and enhances excellence within the membership and in all aspects of intercollegiate athletics. The membership shall create diverse and inclusive environments, promote an atmosphere of respect for and sensitivity to the dignity of every person, and include diverse perspectives in the pursuit of academic and athletic excellence. Member institutions, with assistance from the national office, are expected to develop inclusive practices that foster positive learning and competitive environments for student-athletes, as well as professional development and opportunities for athletics administrators, coaches and staff from diverse backgrounds.

CONSTITUTION,
# Preamble

The National Collegiate Athletic Association is a voluntary, self-governing organization of four-year colleges, universities and conferences committed to the well-being and development of student-athletes, to sound academic standards and the academic success of student-athletes, and to diversity, equity and inclusion. Member institutions and conferences believe that intercollegiate athletics programs provide student-athletes with the opportunity to participate in sports and compete as a vital, co-curricular part of their educational experience. The member schools and conferences likewise are committed to integrity and sportsmanship in their athletics programs and to institutional control of and responsibility for those programs. The basic purpose of the Association is to support and promote healthy and safe intercollegiate athletics, including national championships, as an integral part of the education program and the student-athlete as an integral part of the student body. *(Adopted: 1/20/22 effective 8/1/22)*

CONSTITUTION, ARTICLE 4
# Rules, Compliance and Accountability

**A** Each member institution, consistent with the principle of institutional control, shall hold itself accountable to support and comply with the rules and principles approved by the membership. Further, each school shall ensure that its staff, student-athletes, and other individuals and groups representing the institution's athletics interests comply with applicable rules (institutional, conference, divisional and Association-wide) in the conduct of the institution's intercollegiate athletics programs. *(Adopted: 1/20/22 effective 8/1/22)*

**B** Each division shall determine the methods of investigation and adjudication to hold accountable its members whose representatives engage in behaviors that violate the rules and principles approved by the membership. *(Adopted: 1/20/22 effective 8/1/22)*

**1** Those accountability measures shall identify the people who engage in investigation and adjudication and define their operating authority. *(Adopted: 1/20/22 effective 8/1/22)*

**2** The measures shall be designed to prioritize integrity and fair play, provide fair investigative and adjudicatory procedures and prescribe appropriate penalties in a timely manner. *(Adopted: 1/20/22 effective 8/1/22)*

**3** Member institutions shall cooperate fully in all accountability measures established by the applicable division and shall take all necessary measures to ensure the cooperation of their staff, student-athletes, and institutional representatives. *(Adopted: 1/20/22 effective 8/1/22)*

**4** Divisional and, as appropriate, conference regulations must ensure to the greatest extent possible that penalties imposed for infractions do not punish programs or student-athletes not involved nor implicated in the infraction(s). *(Adopted: 1/20/22 effective 8/1/22)*

**5** Investigation of alleged infractions and, if appropriate, sanctions or penalties, by a division or conference should be consistent and timely. Decisions with respect to minor infractions should be prompt and proportionate. *(Adopted: 1/20/22 effective 8/1/22)*

**6** Each division shall annually report to the Board of Governors all major infractions as defined by each division during the preceding year, the status of investigations, and penalties imposed. *(Adopted: 1/20/22 effective 8/1/22)*

BYLAW, ARTICLE 9
# Legislative Authority and Process

## 9.02 Definitions and Applications.

### 9.02.1 Legislative Provisions.

**9.02.1.1 Area of Autonomy.** An area of autonomy is a legislative provision that provides legislative flexibility to the Atlantic Coast Conference, Big Ten Conference, Big 12 Conference and Southeastern Conference and their member institutions. The abovementioned conferences are granted autonomy in these areas to permit the use of resources to advance the legitimate educational or athletics-related needs of student-athletes and for legislative changes that will otherwise enhance student-athlete well-being. The requirements for adoption, amendment and expansion of the areas of autonomy are set forth in Bylaw 9.2.2.1. A legislative provision that is an area of autonomy is identified by a capital letter A. *(Revised: 1/20/22, 4/22/24 effective 8/2/24)*

**9.02.1.2 Division Dominant.** A division dominant provision is a regulation that applies to all members of a division and is of sufficient importance to the division that it requires a two-thirds majority vote of all delegates present and voting at a division's annual or special Convention. Division dominant provisions are identified by the diamond symbol (♦). *(Revised: 1/9/96 effective 8/1/97, 1/20/22)*

**9.02.1.3 Common.** A common provision is a regulation that applies to more than one of the divisions of the Association. A common provision shall be adopted by each of the applicable divisions, acting separately pursuant to the divisional legislative process described in Bylaw 9.2, and must be approved by all applicable divisions to be effective. Common provisions are identified by the pound sign (#). *(Adopted: 1/14/97 effective 8/1/97, Revised: 1/20/22)*

**9.02.1.4 Federated.** A federated provision is a regulation adopted by the division acting pursuant to the divisional legislative process. Such a provision applies only to the division or subdivision that adopts it. *(Revised: 1/9/96 effective 8/1/97, 1/20/22)*

**9.02.1.5 Football Championship Subdivision Dominant.** A Football Championship Subdivision dominant provision is a regulation that applies only to the Football Championship Subdivision and is of sufficient importance to the subdivision that it requires a two-thirds majority vote for adoption or to be amended pursuant to the legislative process set forth in Bylaw 9.2. Football Championship Subdivision dominant provisions are identified by the initialization FCSD. *(Revised: 1/15/11, 1/20/22)*

## 9.1 Conventions and Meetings.

### 9.1.1 Operational Procedures.

**9.1.1.1 Quorum.** For purposes of voting on division dominant legislation, 40 members of the division shall constitute a quorum. *(Revised: 1/20/22)*

**9.1.1.2 Parliamentary Rules.** The rules contained in the current edition of Robert's Rules of Order, Newly Revised, shall be the parliamentary authority for the conduct of all meetings of the division. Additionally, they shall be the deciding reference used in case of parliamentary challenge in all instances to which they apply and in which they are not superseded by the NCAA constitution, bylaws or any special rule of order adopted by the Association in accordance with Bylaw 9.3.3.1. *(Revised: 1/20/22)*

**9.1.1.3 Football Classification, Voting.** A member institution shall be entitled to vote on legislative issues pertaining only to football in the subdivision in which it is classified. *(Revised: 1/20/22)*

**9.1.1.3.1 Restriction.** An active member or member conference with no football program shall not be permitted to vote on issues affecting only football. *(Revised: 1/20/22)*

**9.1.1.3.2 Football Championship Subdivision Member Applying Bowl Subdivision Football Legislation.** A Football Championship Subdivision member that elects to be governed by the legislation pertaining to the Football Bowl Subdivision in accordance with Bylaw 20.7.1.1.1 shall be eligible to vote on issues pertaining to championship subdivision football. *(Revised: 12/15/06, 1/20/22)*

**9.1.1.3.3 Conference of Football Bowl Subdivision and Football Championship Subdivision Members.** A conference whose members are divided between the Football Bowl Subdivision and the Football Championship Subdivision shall vote in the subdivision in which the majority of its members are classified; or if the membership is

**9.2.2.1.7.2 Adoption of Amendments and Amendments-to-Amendments.** Adoption of proposed amendments and amendments-to-amendments shall require: *(Adopted: 8/7/14, Revised: 1/20/22)*

(a) Approval of three of the five conferences based on a simple majority vote of the institutions within each conference and a 60 percent majority vote of the eligible institutions and student-athlete representatives; or

(b) Approval of four of the five conferences based on a simple majority vote of the institutions within each conference and a simple majority vote of the eligible institutions and student-athlete representatives.

**9.2.2.1.7.3 Finality of Action.** An amendment adopted during a business session shall be final upon adjournment of the business session. The concept of a defeated amendment may not be resubmitted as a new amendment for a two-year period. *(Adopted: 8/7/14, Revised: 1/20/22)*

### 9.2.2.2 Process for Areas of Council-Governance and Football-Specific Legislation.

**9.2.2.2.1 Authority to Adopt or Amend Legislation.** Federated legislation applicable to Division I may be adopted or amended at any meeting of the Council. *(Adopted: 8/7/14 effective 8/1/15, Revised: 1/20/22)*

**9.2.2.2.1.1 Emergency or Noncontroversial Legislation.** The Council may adopt emergency or noncontroversial legislation during any meeting by at least a three-fourths majority vote of its members present and voting. *(Adopted: 8/7/14 effective 8/1/15, Revised: 1/20/22)*

#### 9.2.2.2.2 Sponsorship.

**9.2.2.2.2.1 Amendments and Amendments-to-Amendments.** An amendment or an amendment-to-amendment in an area of Council governance may be sponsored by the Board of Directors, the Council or a conference listed in Bylaw 21.1.1-(a), 21.1.1-(b) or 21.1.1-(c). A football-specific amendment or amendment-to-amendment may be sponsored by a Football Bowl Subdivision conference or a Football Championship Subdivision conference. *(Adopted: 8/7/14 effective 8/1/15, Revised: 1/20/22)*

#### 9.2.2.2.3 Submission Deadlines.

**9.2.2.2.3.1 Concept.** A conference must submit a concept under consideration for sponsorship as an amendment to the national office by 5 p.m. Eastern time July 15. *(Adopted: 1/24/19, Revised: 1/20/22)*

**9.2.2.2.3.2 Amendment.** An amendment sponsored by the Council or a conference listed in Bylaw 21.1.1-(a), 21.1.1-(b) or 21.1.1-(c) or a football-only conference as described in Bylaw 21.2.5 must be submitted to the national office by 5 p.m. Eastern time November 1. A conference may sponsor an amendment only if it submitted a concept of the amendment by the preceding July 15 deadline. From the submission deadline until 5 p.m. Eastern time February 1, the sponsoring conference or Council may refine and change its proposal in any manner that is germane to the original proposal. *(Adopted: 8/7/14 effective 8/1/15, Revised: 8/4/16, 4/8/18, 1/24/19, 1/20/22)*

**9.2.2.2.3.3 Amendment-to-Amendment.** An amendment to an amendment identified for a vote in January may be submitted to the national office until 5 p.m. Eastern time December 15. An amendment to an amendment identified for a vote in April may be submitted to the national office until 5 p.m. Eastern time February 1. Any such amendment shall not increase the modification of the provision to be amended in the original proposal. *(Adopted: 8/7/14 effective 8/1/15, Revised: 1/20/22)*

#### 9.2.2.2.4 Notification to Membership.

**9.2.2.2.4.1 Initial Notification.** Proposed amendments shall be available on the NCAA website for membership review and comment not later than November 15. *(Adopted: 8/7/14 effective 8/1/15, Revised: 1/24/19, 1/20/22)*

**9.2.2.2.4.2 Official Notice.** Proposed amendments and amendments-to-amendments shall be available on the NCAA website for membership review and comment not later than February 8. *(Adopted: 8/7/14 effective 8/1/15, Revised: 8/4/16, 1/20/22)*

#### 9.2.2.2.5 Membership and Council Review.

**9.2.2.2.5.1 Membership Review.** All Division I members may provide comments related to proposed amendments and amendments-to-amendments via the NCAA website until March 1 (5 p.m. Eastern time). *(Adopted: 8/7/14 effective 8/1/15, Revised: 8/4/16, 1/20/22)*

**9.2.2.2.5.2 Council Review.** The Council shall review proposed amendments. The review may include a position of support or opposition. The Council may sponsor an amendment-to-amendment by majority vote of its members present and voting through February 8. *(Adopted: 8/7/14 effective 8/1/15, Revised: 8/4/16, 1/20/22)*

#### 9.2.2.2.6 Voting Process.

**9.2.2.2.6.1 Adoption of Amendments and Amendments-to-Amendments.** Adoption of proposed amendments and amendments-to-amendments submitted by the applicable deadline shall require a majority vote of representatives of the Council present and voting. An amendment-to-amendment that is proposed outside of the legislated submission deadline and that does not increase the modification of the provision to be amended in the original proposal may be adopted by a three-fourths majority vote of the Council members present and voting. *(Adopted: 8/7/14 effective 8/1/15, Revised: 8/4/16, 10/4/17, 1/20/22)*

> **9.2.2.2.6.1.1 Bowl Subdivision and Championship Subdivision Football.** Members of the Council who are representatives of conferences that are members of the Football Bowl Subdivision and the Football Championship Subdivision shall vote separately in their respective subdivisions on legislative issues that pertain only to football. *(Adopted: 8/7/14 effective 8/1/15, Revised: 1/20/22)*
>
> > **9.2.2.2.6.1.1.1 Geographical Representation of Independents.** An institution classified as a Football Bowl Subdivision independent or a Football Championship Subdivision independent shall have its views expressed on football issues by a predetermined Football Bowl Subdivision or Football Championship Subdivision conference representative, respectively, within the institution's geographical region. *(Adopted: 8/7/14 effective 8/1/15, Revised: 1/20/22)*

**9.2.2.2.6.2 Finality of Action.** Legislation adopted by the Council, other than emergency or noncontroversial legislation, shall be considered final at the conclusion of the next Board of Directors meeting, subject to review by the Board of Directors as described in Bylaw 21.1.2. Emergency or noncontroversial legislation adopted by the Council shall be considered final at the conclusion of the Council meeting during which it was adopted. If a proposal does not receive a majority vote of Council members present and voting, it shall be considered defeated. The concept of a defeated amendment may not be resubmitted as a new amendment for a two-year period. *(Adopted: 8/7/14 effective 8/1/15, Revised: 10/4/17, 1/20/22)*

**9.2.2.2.7 Rescission Process.** An amendment adopted with less than an 85 percent majority vote of Council members present and voting shall be subject to a 60-day rescission period. An amendment adopted with an 85 percent majority vote or greater of Council members present and voting shall not be subject to a rescission process. The concept of a rescinded amendment may not be resubmitted as a new amendment for a two-year period. *(Adopted: 8/7/14 effective 8/1/15, Revised: 1/20/22)*

> **9.2.2.2.7.1 Notification to Membership.** Notification of the adoption of legislation by the Council shall be provided to the membership within 15 days of the date of the Board of Directors meeting on which the adoption becomes final. *(Adopted: 8/7/14 effective 8/1/15, Revised: 1/20/22)*
>
> **9.2.2.2.7.2 Submission of Rescission Requests.** A rescission request may be submitted through the NCAA website by an active member institution with voting privileges. A request must be received in the national office not later than 5 p.m. Eastern time within 60 days of the date of the Board of Directors meeting on which the adoption becomes final. A request must be approved by the institution's chancellor or president. The institution's chancellor or president or a designated representative may submit the rescission request to the national office. *(Adopted: 8/7/14 effective 8/1/15, Revised: 1/20/22)*
>
> **9.2.2.2.7.3 Threshold for Rescission.** An amendment shall be rescinded upon submission of rescission requests from at least two-thirds of all active Division I institutions that are eligible to submit a request. An amendment that pertains only to football shall be rescinded in the applicable subdivision upon submission of rescission requests from at least two-thirds of all active Football Bowl Subdivision or Football Championship Subdivision institutions that are eligible to submit a request. *(Adopted: 8/7/14 effective 8/1/15, Revised: 1/20/22)*

**9.2.2.2.8 Other Rules and Procedures.** The Board of Directors or the Council may approve such additional rules and procedures governing the legislative process consistent with the provisions of this section (Bylaw 9.2.2) as it determines are necessary to ensure an efficient process to meet the legislative needs of the membership. *(Adopted: 1/9/96 effective 8/1/97, Revised: 10/4/17, 1/20/22)*

> **9.2.2.2.8.1 Sunset Provision.** If the Council takes no action on a proposal within one year of its initial or subsequent consideration, the proposal shall be considered defeated. *(Adopted: 10/4/17, Revised: 1/20/22)*

**9.2.3 Sponsorship -- Amendments to Division Dominant Provisions.**

**9.2.3.1 Amendment.** An amendment to a division dominant provision may be sponsored only by the Board of Directors. *(Adopted: 1/9/96 effective 8/1/97, Revised: 1/14/97, 1/20/22)*

**9.2.3.2 Amendment-to-Amendment.** An amendment-to-amendment to a division dominant provision may be sponsored only by the Board of Directors. *(Adopted: 1/9/96 effective 8/1/97, Revised: 1/14/97, 1/20/22)*

(i) Entry fees; and

(j) Other reasonable expenses.

**12.02.2.1 Application** Unless otherwise permitted by the NCAA constitution or bylaws, actual and necessary expenses may be provided only if such expenses are for competition on a team or in a specific event or for practice that is directly related to such competition. The value of such expenses must be commensurate with the fair market value of similar goods and services in the locality in which the expenses are provided and must not be excessive in nature. Actual and necessary expenses shall not include the expenses or fees of anyone other than the individual who participates as a member of the team or in a specific event. *(Adopted: 1/19/13 effective 8/1/13)*

**12.02.3 Calculation of Actual and Necessary Expenses -- Individual Sports and Women's Beach Volleyball.** In individual sports and women's beach volleyball, the calculation of an individual's actual and necessary expenses shall be based on expenses incurred during each calendar year (January-December), rather than on an event-by-event basis. *(Adopted: 1/19/13 effective 8/1/13, Revised: 1/23/19 Immediate; may be applied retroactively to expenses incurred on or after January 1, 2019.)*

**12.02.4 Family Member.** A family member is an individual with any of the following relationships to the prospective student-athlete: spouse, parent or legal guardian, child, sibling, grandparent, domestic partner or any individual whose close association with the prospective student-athlete is the practical equivalent of a family relationship. *(Adopted: 4/25/18)*

**12.02.5 Individual.** An individual, for purposes of this bylaw, is any person of any age without reference to enrollment in an educational institution or status as a student-athlete.

**12.02.6 Intercollegiate Competition.** Intercollegiate competition is considered to have occurred when a student-athlete in either a two-year or a four-year collegiate institution does any of the following: *(Revised: 1/10/91, 1/16/93, 1/11/94, 1/10/95, 1/9/06, 7/31/23)*

(a) Represents the institution in any contest against outside competition, regardless of how the competition is classified (e.g., scrimmage, exhibition or joint practice session with another institution's team) or whether the student is enrolled in a minimum full-time program of studies;

(b) Competes in the uniform of the institution, or, during the academic year, uses any apparel (excluding apparel no longer used by the institution) received from the institution that includes institutional identification; or

(c) Competes and receives expenses (e.g., transportation, meals, housing, entry fees) from the institution for the competition.

**12.02.6.1 Exempted Events.** Participation in events listed in Bylaw 16.8.1.2 is exempted from the application of this legislation. *(Revised: 1/10/92)*

**12.02.6.2 Participation on an Institution's Club Team.** Participation on a collegiate institution's club team is exempted from the application of this legislation, provided the institution did not sponsor the sport on the varsity intercollegiate level at the time of participation. *(Adopted: 6/24/09)*

**12.02.7 Limited Benefit -- Prior to Initial Full-Time Enrollment at an NCAA Institution -- Expenses from a Permissible Source.** Prior to initial full-time enrollment at an NCAA institution, if an individual receives expenses from a permissible source (e.g., event sponsor, club team) that exceed the individual's actual and necessary expenses by $300 or less, the eligibility of the individual shall not be affected. *(Adopted: 1/19/13 effective 8/1/13)*

**12.02.8 Limited Benefit -- Enrolled Student-Athlete -- Expenses from a Permissible Source.** If a student-athlete engages in permissible outside competition and receives expenses from a permissible source (e.g., event sponsor, club team) that exceed the student-athlete's actual and necessary expenses by $300 or less, the eligibility of the student-athlete shall not be affected and the institution is not required to submit a self-report of the infraction. *(Adopted: 1/19/13 effective 8/1/13)*

**12.02.9 Organized Competition.** Athletics competition shall be considered organized if any of the following conditions exists: *(Adopted: 7/31/14)*

(a) Competition is scheduled and publicized in advance;

(b) Official score is kept;

(c) Individual or team standings are maintained;

(d) Official timer or game officials are used;

(e) Admission is charged;

(f) Teams are regularly formed or team rosters are predetermined;

(g) Team uniforms are used;

(h) A team is privately or commercially sponsored; or

**12.7.4.2 Administration.** The following procedures shall be used in administering the form: *(Adopted: 4/24/03, Revised: 8/7/03 effective 8/1/04, 7/30/10, 1/23/19)*

(a) The authorization/consent form shall be administered individually to each student-athlete by the athletics director or the athletics director's designee before the student-athlete's participation in intercollegiate athletics each academic year.

(b) Signing the authorization/consent shall be voluntary and is not required by the student-athlete's institution for medical treatment, payment for treatment, enrollment in a health plan or for any benefits (if applicable) and is not required for the student-athlete to be eligible to participate.

**12.7.5 Eligibility Requirements for Male Students to Practice With Women's Teams.** A male student may engage in practice sessions with women's teams subject to the following conditions: *(Revised: 5/12/05, 5/29/08, 7/31/14, 4/26/17, 7/31/23)*

(a) A male student who practices with an institution's women's team must be verified as eligible for practice in accordance with Bylaw 14.2.1 and must have eligibility remaining under the five-year rule (see Bylaw 12.8.1);

(b) It is not permissible for an institution to provide a male student financial assistance in return for practicing with a women's team. A male student who is receiving financial aid or any compensation for serving in any position in the athletics department may not practice with a women's team. A male student-athlete who is a counter in a men's sport may not engage in practice sessions with an institution's women's team in any sport;

(c) It is not permissible for an institution to provide a male student housing and food to remain on campus during a vacation period to participate in practice sessions with a women's team;

(d) It is not permissible for a recruited male student-athlete who is serving an academic year of residence as a nonqualifier to participate in practice sessions with a women's team. A nonrecruited male student who is serving an academic year of residence as a nonqualifier may participate in practice sessions with a women's team;

(e) It is permissible for an institution to provide practice apparel to a male student for the purpose of practicing with a women's team; and

(f) A male student who practices with an institution's women's basketball team may participate in required summer athletic activities, provided the student was enrolled full time at the conclusion of the regular academic term (e.g., spring semester or quarter) immediately preceding the institution's summer term.

**12.7.5.1 Travel Expenses In Conjunction With Away-From-Home Competition – Women's Basketball.** A male student who regularly engages in practice sessions with an institution's women's basketball team may receive travel expenses to participate in practice sessions in conjunction with the institution's away-from-home competition. *(Adopted: 6/26/24)*

## 12.8 Seasons of Competition: Five-Year Rule.
A student-athlete shall not engage in more than four seasons of intercollegiate competition in any one sport (see Bylaws 12.02.6 and 14.3.3). An institution shall not permit a student-athlete to represent it in intercollegiate competition unless the individual completes all seasons of participation in all sports within the time periods specified below: *(Revised: 7/31/14)*

**12.8.1 Five-Year Rule.** A student-athlete shall complete the student-athlete's seasons of participation within five calendar years from the beginning of the semester or quarter in which the student-athlete first registered for a minimum full-time program of studies in a collegiate institution, with time spent in the armed services, on official religious missions or with recognized foreign aid services of the U.S. government being excepted. For international students, service in the armed forces or on an official religious mission of the student's home country is considered equivalent to such service in the United States. *(Revised: 4/2/10, 7/31/14)*

**12.8.1.1 Determining the Start of the Five-Year Period.** For purposes of starting the count of time under the five-year rule, a student-athlete shall be considered registered at a collegiate institution (domestic or foreign; see Bylaw 14.02.4) when the student-athlete initially registers in a regular term (semester or quarter) of an academic year for a minimum full-time program of studies, as determined by the institution, and attends the student's first day of classes for that term (see Bylaw 12.8.2). *(Revised: 7/31/14)*

**12.8.1.2 Service Exceptions to the Five-Year Rule.** Time spent in the armed services, on official religious missions or with recognized foreign aid services of the U.S. government is excepted from the application of the five-year rule. Among such services that qualify a student-athlete for an extension of the five-year rule are: *(Revised: 4/2/10, 7/31/14)*

(a) Military Sea Transport Service;

(b) Peace Corps; or

(c) Service as a conscientious objector ordered by the Selective Service Commission (or the equivalent authority in a foreign nation) in lieu of active military duty.

**12.8.1.2.1 Elapsed Time/Service to Enrollment.** If a student-athlete enrolls in a regular term of a collegiate institution at the first opportunity following completion of any one of the commitments described in the exceptions to this bylaw, the elapsed time (the exact number of calendar days) between completion of the commitment and the first opportunity for enrollment may be added to the exact number of days served on active duty in the armed services, with foreign aid services or on official religious missions and will not count toward the student-athlete's five years of eligibility. It is not permissible to extend the five-year period by any additional time beyond the first opportunity to enroll (the opening day of classes of the first regular term at the institution in which the student-athlete enrolls as a regular student immediately following the termination of the active-duty commitment). *(Revised: 4/2/10, 7/31/14)*

**12.8.1.2.2 Collegiate Enrollment Concurrent With Service Assignment.** Any time in which a student-athlete is enrolled for a minimum full-time load as a regular student in a collegiate institution while simultaneously on active duty in the U.S. military, on an official religious mission or with a recognized foreign aid service of the U.S. government shall count against the five calendar years in which the student-athlete's seasons of eligibility must be completed. *(Revised: 4/2/10, 7/31/14)*

**12.8.1.3 Academic Study Abroad Exception.** Time spent participating in a full-time study-abroad program during a regular term of an academic year may be excepted from the application of the five-year rule, provided: *(Adopted: 1/19/17 effective 8/1/17)*

(a) The institution recognizes the student-athlete as a full-time student at the time of participation in the study-abroad program;

(b) At the time of participation in the study-abroad program, the student-athlete is academically eligible for competition and is not subject to an athletically related suspension;

(c) The student-athlete does not participate in practice or competition with the institution's team and does not engage in outside competition while participating in the study-abroad program;

(d) The student-athlete satisfactorily completes the study-abroad program; and

(e) The student-athlete earns a baccalaureate degree within five years or fewer.

**12.8.1.4 Internship or Cooperative Educational Work Experience Program Exception.** Time spent participating in a full-time internship or cooperative educational work experience program during a regular term of an academic year may be excepted from the application of the five-year rule, provided: *(Adopted: 1/19/17 effective 8/1/17)*

(a) The institution recognizes the student-athlete as a full-time student at the time of participation in the internship or cooperative educational work experience program;

(b) At the time of participation in the internship or cooperative educational work experience program, the student-athlete is academically eligible for competition and is not subject to an athletically related suspension;

(c) The student-athlete does not participate in practice or competition with the institution's team and does not engage in outside competition while participating in the internship or cooperative educational work experience program;

(d) The student-athlete satisfactorily completes the internship or cooperative educational work experience program; and

(e) The student-athlete earns a baccalaureate degree within five years or fewer.

**12.8.1.5 Pregnancy Exception.** A member institution may approve a one-year extension of the five-year period of eligibility for a female student-athlete for reasons of pregnancy. *(Revised: 7/31/14)*

**12.8.1.6 Athletics Activity Waiver.** The Committee on Student-Athlete Reinstatement, or a committee designated by it, shall have the authority to waive this provision by a two-thirds majority of its members present and voting to permit student-athletes to participate in: *(Revised: 1/10/91, 1/9/96, 1/14/12, 7/31/14, 10/17/19, 1/22/20)*

(a) Official Pan American, Parapan American, World Championships, World Cup, World University Games (Universiade), World University Championships, Olympic and Paralympic training, tryouts and competition;

(b) Officially recognized training and competition directly qualifying participants for final Olympic or Paralympic tryouts; or

(c) Official tryouts and competition involving national teams sponsored by the appropriate national governing bodies of the U.S. Olympic and Paralympic Committee (or, for student-athletes representing another nation, the equivalent organization of that nation, or, for student-athletes competing in a non-Olympic or non-Paralympic sport, the equivalent organization of that sport).

**12.8.1.6.1 Junior Level Competition.** The athletics activity waiver does not apply to junior level training, tryouts or competition (e.g., Youth Olympic Games, U20 World Cup, Junior National Teams) that may be associated with the training, tryouts or competition specified in Bylaw 12.8.1.6. *(Adopted: 2/17/17)*

**12.8.1.6.2 Athletics Activity Waiver Criteria.** Extensions of the five-year period of eligibility for student-athletes by the Committee on Student-Athlete Reinstatement, or its designated committee, shall be based on the following criteria: The member institution in which the student-athlete is enrolled must establish to the satisfaction of the Committee on Student-Athlete Reinstatement (by objective evidence) that the student-athlete was unable to participate in intercollegiate athletics as a result of participation in one of the activities listed in the above legislation for a specific period of time. Further, such an extension shall be limited to one time and for a period not to exceed one year per student-athlete, per sport. *(Revised: 8/11/98, 7/31/14)*

**12.8.1.7 Five-Year Rule Waiver.** The Committee on Student-Athlete Reinstatement, or its designated committee, by a two-thirds majority of its members present and voting, may approve waivers of the five-year rule as it deems appropriate. *(Revised: 7/30/10, 7/31/14)*

**12.8.1.7.1 Waiver Criteria.** A waiver of the five-year period of eligibility is designed to provide a student-athlete with the opportunity to participate in four seasons of intercollegiate competition within a five-year period. This waiver may be granted, based upon objective evidence under the following circumstances: *(Revised: 4/17/91, 1/11/94, 8/10/94, 10/12/95, 4/27/00, 7/30/10, 7/31/14, 4/25/18, 5/19/22 applicable to a student-athlete who qualifies for a waiver that would provide the opportunity to participate in four seasons of competition within a five-year period)*

(a) The student-athlete did not use a season of intercollegiate competition due to an institutional decision to redshirt the student-athlete; the student-athlete was listed on the institution's squad list and was eligible for competition during the segment of the season that concludes with the NCAA championship; and the student-athlete was deprived of the opportunity to participate in intercollegiate competition in one other season due to circumstances beyond the control of the student-athlete or institution. (The use of this provision is limited to one time in a student-athlete's period of eligibility); or

(b) The student-athlete is deprived of the opportunity to participate for more than one season in his or her sport within the five-year period of eligibility for reasons that are beyond the control of the student-athlete or the institution.

**12.8.1.7.1.1 Circumstances Beyond Control.** Circumstances considered to be beyond the control of the student-athlete or the institution and do not cause a participation opportunity to be used shall include, but are not limited to, the following: *(Adopted: 8/10/94, Revised: 10/12/95, 8/12/97, 1/9/06, 7/30/10, 7/31/14)*

(a) Situations clearly supported by contemporaneous medical documentation, which states that a student-athlete is unable to participate in intercollegiate competition as a result of incapacitating physical or mental circumstances;

(b) The student-athlete is unable to participate in intercollegiate athletics as a result of a life-threatening or incapacitating injury or illness suffered by a member of the student-athlete's immediate family, which clearly is supported by contemporaneous medical documentation;

(c) Reliance by the student-athlete upon written, contemporaneous, clearly erroneous academic advice provided to the student-athlete from a specific academic authority from a collegiate institution regarding the academic status of the student-athlete or prospective student-athlete, which directly leads to that individual not being eligible to participate and, but for the clearly erroneous advice, the student-athlete would have established eligibility for intercollegiate competition;

(d) Natural disasters (e.g., earthquake, flood); and

(e) Extreme financial difficulties as a result of a specific event (e.g., layoff, death in the family) experienced by the student-athlete or by an individual upon whom the student-athlete is legally dependent, which prohibit the student-athlete from participating in intercollegiate athletics. These circumstances must be clearly supported by objective documentation (e.g., decree of bankruptcy, proof of termination) and must be beyond the control of the student-athlete or the individual upon whom the student-athlete is legally dependent.

**12.8.1.7.1.2 Circumstances Within Control.** Circumstances that are considered to be within the control of the student-athlete or the institution and cause a participation opportunity to be used include, but are not limited to, the following: *(Adopted: 8/10/94, Revised: 10/12/95, 10/9/96, 7/30/10, 7/31/14)*

(a) A student-athlete's decision to attend an institution that does not sponsor the student-athlete's sport, or decides not to participate at an institution that does sponsor the sport;

**12.10.1 Institutional Responsibility for Eligibility Certification.** The president or chancellor is responsible for approving the procedures for certifying the eligibility of an institution's student-athletes under NCAA legislation. The president or chancellor may designate an individual on the institution's staff to administer proper certification of eligibility. Certification of eligibility must occur prior to allowing a student-athlete to represent the institution in intercollegiate competition (see Bylaw 14.01.1). A violation of this bylaw in which the institution fails to certify a student-athlete's eligibility prior to allowing the student-athlete to represent the institution in intercollegiate competition shall be considered an institutional violation per Bylaw 8.01.3; however, such a violation shall not affect the student-athlete's eligibility, provided all the necessary information to certify the student-athlete's eligibility was available to the institution and the student-athlete otherwise would have been eligible for competition. *(Revised: 3/8/06, 1/14/08, 7/31/14)*

**12.10.2 Squad-List Form.** The institution's athletics director shall compile on a form approved by the Legislative Committee a list of the squad members in each sport on the first day of competition and shall indicate thereon the status of each member in the designated categories. A student-athlete's name must be on the official institutional form in order for the student to be eligible to represent the institution in intercollegiate competition. Violations of this bylaw do not affect a student-athlete's eligibility if the violation occurred due to an institutional administrative error or oversight and the student-athlete is subsequently added to the form; however, the violation shall be considered an institutional violation per Bylaw 8.01.3. (See Bylaw 15.5.11 for details about the administration of the squad list.) *(Revised: 1/14/97, 11/1/07 effective 8/1/08, 7/31/14, 8/7/14, 10/4/17)*

## 12.11 Ineligibility.

**12.11.1 Obligation of Member Institution to Withhold Student-Athlete From Competition.** If a student-athlete is ineligible under the provisions of the constitution, bylaws or other regulations of the Association, the institution shall be obligated to apply immediately the applicable rule and to withhold the student-athlete from all intercollegiate competition. The institution may appeal to the Committee on Student-Athlete Reinstatement for restoration of the student-athlete's eligibility as provided in Bylaw 12.12 if it concludes that the circumstances warrant restoration. *(Revised: 7/31/14)*

**12.11.2 Ineligibility Resulting From Recruiting Violation.** An institution shall not enter a student-athlete (as an individual or as a member of a team) in any intercollegiate competition if it is acknowledged by the institution or established through the Association's infractions process that the institution or a representative of its athletics interests violated the Association's legislation in the recruiting of the student-athlete. The institution may appeal to the Committee on Student-Athlete Reinstatement for restoration of the student-athlete's eligibility as provided in Bylaw 12.12 if it concludes that circumstances warrant restoration. *(Revised: 7/31/14)*

**12.11.2.1 Payment of Legal Fees During Appeal. [A]** An institution may provide actual and necessary expenses for a prospective student-athlete to attend proceedings conducted by the institution, its athletics conference or the NCAA that relate to the prospective student-athlete's eligibility to participate in intercollegiate athletics, provided the prospective student-athlete either has signed a National Letter of Intent with the institution or (if the institution is not a subscribing member of the National Letter of Intent program) the prospective student-athlete has been accepted for enrollment by the institution and has provided written confirmation of intent to enroll at the institution. The cost of legal representation in such proceedings also may be provided by the institution (or a representative of its athletics interests). *(Revised: 7/31/14)*

**12.11.3 Application of Ineligibility Ruling Pending Appeal.** Once an interpretation (per Bylaw 9.3.1.2) applicable to a member institution has been issued and results in the ineligibility of a student-athlete, it is necessary for the institution to apply the rule to the eligibility of the student-athlete, even if review of the interpretation (per Bylaw 9.3.1.2.1.1 or 9.3.1.2.2) at the request of the institution is pending. Failure to withhold such a student-athlete from competition is a violation of the conditions and obligations of membership. *(Revised: 12/22/08, 7/31/14)*

**12.11.4 Ineligible Participation.**

**12.11.4.1 Loss of Eligibility.** A student-athlete shall be denied eligibility for intercollegiate competition in a sport if the student-athlete participates in intercollegiate competition in that sport while ineligible under this bylaw or other applicable NCAA legislation. The certifying institution may appeal to the Committee on Student-Athlete Reinstatement for restoration of the student-athlete's eligibility if it concludes that the circumstances warrant restoration (see Bylaw 12.12). *(Revised: 7/31/14)*

**12.11.4.2 Restitution.** If a student-athlete who is ineligible under the terms of the bylaws or other legislation of the Association is permitted to participate in intercollegiate competition contrary to such NCAA legislation but in accordance with the terms of a court restraining order or injunction operative against the institution attended by such student-athlete or against the Association, or both, and said injunction is voluntarily vacated, stayed or reversed or it is finally determined by the courts that injunctive relief is not or was not justified, the Board of Directors may take any one or more of the

following actions against such institution in the interest of restitution and fairness to competing institutions: *(Revised: 4/26/01 effective 8/1/01, 11/1/07 effective 8/1/08, 8/1/22, 8/31/22 effective 1/1/23)*

(a) Require that individual records and performances achieved during participation by such ineligible student-athlete shall be vacated or stricken;

(b) Require that team records and performances achieved during participation by such ineligible student-athlete shall be vacated or stricken;

(c) Require that team victories achieved during participation by such ineligible student-athlete shall be abrogated and the games or events forfeited to the opposing institutions;

(d) Require that individual awards earned during participation by such ineligible student-athlete shall be returned to the Association, the sponsor or the competing institution supplying same;

(e) Require that team awards earned during participation by such ineligible student-athlete shall be returned to the Association, the sponsor or the competing institution supplying same;

(f) Determine that the institution is ineligible for one or more NCAA championships in the sports and in the seasons in which such ineligible student-athlete participated;

(g) Determine that the institution is ineligible for invitational and postseason meets and tournaments in the sports and in the seasons in which such ineligible student-athlete participated;

(h) Require that the institution shall remit to the NCAA the institution's share of television receipts (other than the portion shared with other conference members) for appearing on any live television series or program if such ineligible student-athlete participates in a contest selected for such telecast, or if the Board of Directors concludes that the institution would not have been selected for such telecast but for the participation of such ineligible student-athlete during the season of the telecast; any such funds thus remitted shall be devoted to the NCAA postgraduate scholarship program; and

(i) Require that the institution that has been represented in an NCAA championship by such a student-athlete shall be assessed a financial penalty as determined by the Committee on Infractions.

## 12.12 Restoration of Eligibility.

**12.12.1 Basis for Appeal.** When a student-athlete is determined to be ineligible under any applicable provision of the constitution, bylaws or other regulations of the Association, the member institution, having applied the applicable rule and having withheld the student-athlete from all intercollegiate competition, may appeal to the Committee on Student-Athlete Reinstatement for restoration of the student's eligibility, provided the institution concludes that the circumstances warrant restoration of eligibility.

**12.12.2 Participation in Appeal Hearing.** Any appeal to restore a student-athlete's eligibility shall be submitted in the name of the institution by the president or chancellor (or an individual designated by the president or chancellor), faculty athletics representative, senior woman administrator or athletics director (for the men's or women's program). At least one of those individuals must participate in any hearing of the appeal that involves direct participation by the student-athlete or other individuals representing the institution or the student. *(Revised: 1/11/94, 3/8/06, 7/31/14)*

**12.12.3 Student Responsibility, Relationship to Restoration of Eligibility.** A student-athlete is responsible for the student-athlete's involvement in a violation of NCAA regulations (as defined in Bylaw 19), and the Committee on Student-Athlete Reinstatement may restore the eligibility of a student involved in any violation only when circumstances clearly warrant restoration. The eligibility of a student-athlete involved in a major violation shall not be restored other than through an exception authorized by the Committee on Student-Athlete Reinstatement in a unique case on the basis of specifically stated reasons.

Labor Day weekend) and between terms when classes are not in session (e.g., winter break)], such an individual is not permitted to practice or compete on an institutional club team or on an outside sports team, including a national team. *(Adopted: 1/10/13)*

**14.3.3 Seasons of Competition -- Nonqualifiers.** Nonqualifiers, recruited or nonrecruited, shall not engage in more than three seasons of competition in any one sport. A student who transfers to a Division I member institution from another collegiate institution shall not engage in more than four seasons of competition with not more than three of those seasons in Division I.

   **14.3.3.1 Application of Delayed Enrollment Legislation.** A student-athlete who is charged with a season (or seasons) of eligibility due to the application of delayed enrollment legislation (Bylaws 12.8.3.2 and 12.8.3.5) is considered to have used that season (or seasons) of competition for purposes of Bylaw 14.3.3. *(Revised: 7/15/15)*

   **14.3.3.2 Fourth Season of Competition -- Nonqualifiers.** A fourth season of intercollegiate competition shall be granted to a student-athlete who is a nonqualifier, provided that at the beginning of the fifth academic year following the student-athlete's initial, full-time collegiate enrollment, the student-athlete has completed at least 80 percent of the student-athlete's designated degree program. *(Revised: 4/28/05 effective 8/1/05, 1/3/06, 10/27/11, 4/26/12 effective 8/1/16 for student-athletes initially enrolling full time in a collegiate institution on or after 8/1/16)*

      **14.3.3.2.1 Waiver.** The Progress-Toward-Degree Waivers Committee (see Bylaw 21.7.5.1.3.2) shall have the authority to grant a fourth season of intercollegiate competition to a student-athlete who is a nonqualifier based on objective evidence of extraordinary circumstances that warrant a waiver of the normal application of this regulation. *(Adopted: 1/13/98 effective 8/1/98, Revised: 4/27/00 effective 8/1/00, 8/4/05, 1/3/06, 11/1/07 effective 8/1/08, 1/16/10 effective 5/1/10, 10/27/11, 4/26/12 effective 8/1/16 for student-athletes initially enrolling full time in a collegiate institution on or after 8/1/16)*

**14.3.4 Residence Requirement -- Academic Redshirts and Nonqualifiers.** An academic redshirt must fulfill an academic year of residence in order to be eligible to compete and to practice away from the institution. A nonqualifier must fulfill an academic year of residence in order to be eligible for practice, competition and athletically related financial aid (see Bylaw 14.3.2.1.1). *(Revised: 1/10/90 effective 8/1/90, 1/10/95 effective 8/1/96, 1/3/06, 4/14/10, 10/27/11, 4/26/12 effective 8/1/16 for student-athletes initially enrolling full time in a collegiate institution on or after 8/1/16)*

**14.3.5 Determination of Freshman Eligibility.**

   **14.3.5.1 Participation Prior to Certification.** If a student-athlete reports for athletics participation or initial enrollment at the certifying institution before his or her qualification status has been certified, the student may practice, but not compete, during a 45-day period, provided the student meets all other requirements to be eligible to practice. An institution may provide athletically related financial aid to the student during this period, provided the student meets all other requirements to receive athletically related financial aid. After the 45-day period, the student shall have established minimum requirements (as certified by the Eligibility Center) to continue practicing, to continue receiving athletically related financial aid or to compete. *(Revised: 1/11/89, 10/7/05, 5/9/07, 9/18/07, 1/15/11 effective 8/1/11, 1/19/13 effective 8/1/13, 6/30/22 effective 8/1/22)*

      **14.3.5.1.1 Effect of Violations.** A violation of Bylaw 14.3.5.1 in which the student-athlete is subsequently certified as a qualifier shall be considered an institutional violation per Bylaw 8.01.3 but shall not affect the student-athlete's eligibility. *(Adopted: 10/29/15)*

   **14.3.5.2 High School Graduate.** In order to be considered a high school graduate, a prospective student-athlete shall meet all graduation requirements, including academic and nonacademic (e.g., state exit exams, community service, senior project) requirements, as defined for all students by the high school or secondary school. *(Adopted: 4/23/08)*

      **14.3.5.2.1 Equivalency Test/Diploma.** A prospective student-athlete who does not graduate from high school but completes a state high school equivalency test [e.g., General Educational Development (GED)] and obtains a state high school equivalency diploma may satisfy the graduation requirement, provided the equivalency test is completed on or after the high school graduation date of the prospective student-athlete's class [as determined by the first year of enrollment in high school (ninth grade) or the international equivalent as specified in the NCAA Guide to International Academic Standards for Athletics Eligibility]. *(Revised: 6/16/04, 1/10/05 effective 8/1/05, 6/15/15)*

   **14.3.5.3 Advanced Placement.** If the student-athlete is admitted with a minimum of 24 semester hours or a minimum of 36 quarter hours of advanced placement from a College Entrance Examination Board (CEEB) examination (or from a similar proficiency examination) and/or concurrent high school/college credit without previous enrollment at a collegiate institution, the student-athlete shall be immediately eligible. Credits earned from extension or summer-session courses may not be counted in satisfaction of this requirement. A "similar proficiency examination" must be an advanced or higher level,